THE EQUITABLE GUARANTEE AND TRUST COMPANY *vs.* JOHN P. DONAHOE, Collector of Taxes for the Northern District of the City of Wilmington.

*Court in Banc—Adams Tax Law—Constitution—Statute; Construction of—Act of Legislature; Title of to Express Subject—Amending Act—Repealing Act— Repealing Part of Act—Taxation.*

1. The title of the original act was "An Act to Equalize Taxation for State and County Purposes;" and of the amending act, "An Act to Amend Chapter 381, Volume 20, Laws of Delaware, entitled 'An Act to Equalize Taxation for State and County Purposes.'" The original act provided for ˏtaxation for State and County purposes; but a section of the amending act provided for Municipal Taxation also. *Held* that so much of the amending act as related to taxation for *municipal purposes* was unconstitutional and void, under Section 16, Article 2, of the Constitution of this State; because not embraced within the title of the act, which was confined to taxation for *State* and *county* purposes.

2. When the repealing act is void and inoperative from the beginning, it does ˏnot effect a repeal of the original act.

3. But when an amending act expressly repeals a section, or part of an original act, and substitutes an unconstitutional section, or part, radically different in some of its provisions, in lieu thereof; the section, or part, of the original act so repealed, is not retained or restored; unless the repealing clause itself is void. In cases of express repeal, the old section remains valid, only where the amending act is totally void, including the repealing clause; and therefore the original act was never in fact repealed.

4. Where the unconstitutional part of an act cannot be separated from the residue without emasculating the statute, the act is unconstitutional and void.

5. Where the object for which a tax is levied is elimated from the original act, because of the invalidity of the amending act, the statute is left without a purpose, and is anullity.

(*May 16, 1901*).

LORE, C. J., and SPRUANCE, GRUBB, PENNEWILL and BOYCE, Associate Justices, sitting.

*Williard Saulsbury* and *Anthony Higgins* for plaintiff.

*John H. Rodney, Henry C. Conrad* and *Peter L. Cooper Jr.*, for defendant.

Court in Banc.

ACTION OF ASSUMPSIT (No. 143, May Term, 1900). Case stated in the Superior Court for New Castle County.

The material facts are stated in the opinion of the Court.

LORE, C. J.:—This is an action of assumpsit, brought by the Equitable Guarantee and Trust Company, the plaintiff, to recover from John P. Donahoe, Collector of Taxes for the Northern District of the City of Wilmington, the defendant, certain taxes assessed for the years 1898 and 1899 against the plaintiff, under the provisions of *Chapter 381, Volume 20, Laws of Delaware*, passed May 29, 1897, entitled " An Act to Equalize Taxation for State and County Purposes," and under the provisions of *Chapter 24, Volume 21, Laws of Delaware*, approved May 25, 1898, entitled " An Act to Amend *Chapter 381, Volume 20, of the Laws of Delaware*, entitled 'An Act to Equalize Taxation for State and County Purpose;' " which said taxes were paid by the plaintiff under protest.

The plaintiff claims that these acts, collectively known as the Adams Tax Law, are unconstitutional, null and void, for the following reasons :

*First*, because neither the title of the original act of 1897 (Chapter 381, Volume 20), nor of the amending act of 1898 (Chapter 24, Volume 21), discloses the subject of *municipal taxation*, which is embraced in the text of the amending act, and is therefore within the inhibition of *Section 15, Article 2* of the *Constitution of 1897*.

*Second*, because the title is deceptive, false and misleading ; in that it claims to be an act ".*to equalize*," when in fact the provisions

E. G. AND T. CO. vs. DONAHOE. 193

OPINION.

of the amending act of 1898 produce *inequality* in taxation; requiring as it does citizens of rural New Castle County to contribute three times as much for county purposes as is required of a citizen of Wilmington.

*Third.* The plaintiff further claims, that in any event it must recover the amount paid as taxes for 1898, because the tax for that year was not assessed according to law; in that no opportunity of review or of appeal from the assessment was given to the taxable; that he had no day in court.

The first inquiry is, does the title disclose the subject of *municipal* taxation, within the scope of *Section 16, Article 2*, of the *Constitution of 1897*.

The title of the original act of 1897 is, "An Act to Equalize Taxation for *State* and *County* Purposes."

The text of that act relates to the assessment and collection of taxes for State and County purposes, upon all investments paying interest or yielding an income which are not taxed for either State or County purposes or exempt from taxation, and provides that one-fourth of the money so raised in each county shall be for the use of the State, and the other three-fourths for the use of the county in which the same was levied and collected.

The title of the amending act of 1898 is, "An Act to Amend Chapter 381, Volume 20, Laws of Delaware, entitled 'An Act to Equalize Taxation for *State* and *County* Purposes.'"

Section 7 of the latter act provides as to New Castle County as follows: "That of the moneys which shall be levied and collected under the provisions of this act, within the limits of the City of Wilmington, one-fourth thereof shall be for the use of the State and another one-fourth thereof shall be for the use of New Castle County, and the remaining two-fourths thereof shall be for the *use of 'The Mayor and Council of Wilmington.'*"

Thus introducing into the act as amended the subject of municipal taxation.

*Section 16, Article 2* of the Constitution of 1897, as already stated, is as follows: "No bill or joint resolution except bills appropriating money for public purposes, shall embrace more than one subject, *which shall be expressed in the title.*"

Judge Cooley in his work on *Constitutional Limitations, 143* has concisely stated the reasons for the insertion of provisions like this in State Constitutions. He says: "It may be assumed as settled, that the purpose of these provisions was, *first* to prevent hodge-podge or log-rolling legislation:

"*Second,* to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted;

"*Third,* to fairly apprise the people through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

So far as the subject of taxation for municipal purposes is concerned, is not this title open to all of the three objections stated by Judge Cooley? *First,* as tending to log rolling or omnibus legislation; *second,* surprise or fraud upon the Legislature, there being no intimation of this subject; *third,* giving no fair notice to the people of this subject of legislation.

In addition, does not the title negative the presence of legislation for municipal purposes, by expressly confining the scope of the act to be "for State ond County purposes;" and to that extent deceiving and misleading the Legislature and the people?

If the title had stopped with the words "An Act to Equalize Taxation;" a different question would have been presented. In that case, the general subject of taxation, without any qualification other than that of *equality,* would be covered. When to these words, however, are added the limitation "for State and County

E. G. AND T. CO. vs. DONAHOE.          195

OPINION.

purposes;" it becomes the legislative declaration that no other than state and county taxation are contemplated.

In *Montgomery Building and Loan Association vs. Robinson, 69 Ala. 417*, this whole subject is very ably discussed, and this clear rule is laid down.  " The question must always be, whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject.   If we do, the law embraces a subject not described in the title."   The provision of the Alabama Constitution is as follows :  " Each law shall embrace but one subject, which shall be described in the title."

In the case of *Sewickley Borough vs. State, 168 Pa. St., 169*, it was held that under " an act to *exempt* from taxation public property used for public purposes and places of religious worship," etc. that a provision in the act *taxing* other property not used for such purposes was unconstitutional, under the following constitutional provision :  " No bill except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in the title."

It was decided in *Hymen vs. The State, 87 Tenn., 109*, that " A statute prohibiting sales of liquor to *drunken husbands* is unconstitutional and void if enacted either as an original or amended act, under the caption ' An Act to Prevent the Sale, Giving or Delivery of Liquor to *Minors.*'   Its purview is not germane to its caption."

The provision of the Tennessee Constitution was that " No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The Court in that case uses the following language :  " The precise question to be determined in this case is, whether the title of the original act, entitled; ' An Act to prevent the Sale or Giving or Delivery of Liquors to Minors,' is broad enough to embrace an amendment, not relating in any way to prohibiting sales or gifts of liquors to *minors*, but which prohibits the sale or giving liquors to *drunken husbands*.   We are not at all disposed, to construe this

constitutional provision strictly.  On the contrary it should be given a liberal construction, so as not to embarrass legislation by a construction unnecessary to accomplish the beneficial purposes for which it was adopted.  Yet, as stated by the eminent constitutional lawyer already cited (Cooley), the Legislature may make the title to an act as restrictive as they please.  It is obvious that they may sometimes so form it, as to preclude many matters being included in the act, which might with entire propriety have been embraced in the enactment with the matter indicated in the title, but which must not be extended because the bill has been made unnecessarily restrictive.  The Court cannot enlarge the scope of the title; they are vested with no dispensing power.  The Constitution has made the title the conclusive index to the legislative intent, as to what shall have operation.  It is no answer to say that the title might have been made more comprehensive if in fact the Legislature has not seen fit to make it so.  (*Cooley Const. Lims., 179*).  It is not to be doubted that the Legislature might have in one act, prohibited the sale of liquors to both minors and habitual drunkards, and that many other classes of persons might have been included within the prohibition.  But in such case, the title to the act should have been comprehensive enough to have included the several prohibitions.

"The title of the act in question is an exceedingly restrictive one.  It clearly indicates, that the subject of the act is the sale of liquors to *minors*.  The subject of legislation is not the sale or giving of liquors generally, but the sale to a very limited class, to wit; *minors*.  It would never occur to legislator or layman that under such an index would be found legislation prohibiting the sale of liquors to any other class of persons than minors."  Substitute "*State and county purposes*" for "*minors;*" and "*Municipal purposes*" for "*drunken husbands;*" the reasoning in this case applies with equal force to the one we are now considering; the more emphatic wording of the provision of the Tennessee Constitution being nothing more than what would be the legal interpretation of our own Constitution where the provision is clearly mandatory.

E. G. AND T. CO. vs. DONAHOE. 197

OPINION.

In the case of the *Mayor and Council of Knoxville vs. Lewis 12 Lea (Tenn.) 180*, the Supreme Court of Tennessee seems to have decided the precise question presented in this case.

It held a law to be unconstitutional which was entitled " An Act to Provide more Just and Equitable Laws for the Assessment and Collection of Revenue for *State and County* Purposes," etc.; because in the text of the law provision was made for the collection of *municipal* tax, while no reference is made in the title.

The Court says, " That taxes for municipal purposes are not taxes levied for State or county purposes, and are not included under the terms of the title to this act, seems too clear for argument or illustration. If a State tax is not a municipal tax, or a county tax not one, then it is clear the title does not provide for, but excludes any provision for the collection of municipal taxes. The expression of these purposes necessarily excludes a different one."

Under a liberal construction of our constitutional provision, it must be manifest that the subject of taxation for municipal purposes is not within the title of the act in question, which is confined to State and county purposes; and so much of the amending act as relates to that subject is therefore unconstitutional and void.

Our next inquiry must be to what extent the act as amended is affected by these unconstitutional provisions. It is claimed by the defendant that if so much of Section 7 of the act of 1898, which embodies the new Section 12 as relates to municipal taxation should be declared void, that Section 12 of the original act of 1897 would stand and still leave the statute effective. Upon this point he cites, *Cooley on Const. Lims. (5 Ed.), 222 ; Shepardson vs. M. & B. R. R. Co., 6 Wis., 605 ; State vs. Judge of County Court, 11 Wis., 50 ; Sullivan vs. Adams, 6 Gray, 476 ; DeVoy vs. Mayor, etc., 33 Barb., 264 ; Coupon vs. Delroe, 14 Mich., 276 ; Childs vs. Shower, 68 Iowa, 261*. These and many other cases have been carefully examined. They all turn upon provisions similar in effect to section 23 of the amending act of 1898, viz.: "All acts or parts of acts inconsistent with this act are hereby repealed," and are cases of repeal by implication.

In such cases this reasoning is entirely correct, because the repealing act being void and inoperative from the beginning, it did not effect a repeal, and therefore the original act stood untouched.

Under section 7 of the amending act of 1898, section 12 of the original act is expressly repealed by these words: "Amend the said chapter by striking out all of section 12 thereof." Here the Legislature has specifically and expressly repealed section 12, which it had the power to do. This left the original act without any section 12; and if the substitute therefor provided by the amended act be unconstitutional the original statute has no section 12 and the statute as amended is emasculated to that extent. This proposition would seem to require no elaboration.

In this connection we will consider cases where the amending act expressly repeals some part of the orignal statute.

Where an amending act, among other things, expressly repeals a section or a part of an original act, and substitutes an unconstitutional section or part in lieu thereof, no court, so far as the most careful investigation discloses, has ever held, that the section or part of the original act so repealed was retained or restored, unless the repealing clause itself was void.

Courts have never attempted to say what a Legislature would have done, if it had anticipated that the substitute would prove to be unconstitutional; unless the Legislature has clearly expressed its intent in such a contingency, amounting substantially to a declaration in the amending act, that in case the new section or part should prove to be void then the old should stand. Indeed to do so, would be to stipulate in umbra, and to formulate and enact law out of the brains of the Judge, in the face of the express declaration of the Legislature that the old section is stricken out. We can conceive no more dangerous method of substituting the judicial will for legislative enactment.

In cases of express repeal, it seems to be settled, that the old section only remains valid, where the amending act is totally void including the repealing clause; and therefore the original act was

E. G. AND T. CO. vs. DONAHOE.        199

OPINION.

never in fact repealed. This solves every case of express repeal that we have been able to find.

In *Judson vs. City of Bessemer, 87 Alabama, 240,* the amending act read as follows: "That Section 38 of the Charter of the City of Bessemer, Alabama, be and the same is hereby amended by striking out the word *fifty* in the fifth line of said section, and inserting the word *thirty* in lieu thereof." The repealing clause of the amending act was held to be void, not because it was connected with the unconstitutional substitute, but because the whole amending act, including the express repeal, had not been re-enacted and published at length, under the provision of the Alabama Constitution, "That no law shall be revised, amended, or the provisions thereof extended, or conferred, by reference to its title only; but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length." The case, therefore, falls within the principle of a void amendment including the repealing clause, thus leaving the old law unrepealed.

Coming within the same rule is the case of the *State ex rel. vs. Blend, et al., 121 Ind., 514;* where the Court held that the *body* of the amending act was unconstitutional, which body embraced the repealing clause. The language of the repealing clause was as follows: "That all laws and parts of laws in conflict with it, and especially the act providing for a metropolitan police in cities of 29,000 inhabitants, are by this act repealed." The Court does not state the ground upon which it holds the body of the amending act to be unconstitutional, and the case is otherwise quite indeterminate and unsatisfactory; but it does hold that "the body of the amending act was void," which carried the repealing clause as a part of it.

To a similar effect are all the cases where an express repeal has been disregarded.

In the case at bar, the Legislature has said expressly, *strike out* the old section 12, and insert in *lieu* thereof the new section 12. The striking out was within its power and valid, and old section 12 is

therefore out. New section 12 was beyond its power and unconstitutional, and is not therefore in.

Under all the rules of construction, the striking out or repeal, and the inserting of the substituted section 12, are not so inseparably connected in terms, in this case, that if one falls the other must fall; but are separable, each being a distinct substantive and complete thing in itself when separated. Are they then made inseparable by *legislative intent?*

By coupling together in one section of the amending act, the express repeal of old section 12 and the substitute new section 12, the legislative intent that they are inseparable is no more manifest, than if in one section of the amending act, old section 12 had been repealed, and in some other remote section, or in an entirely independent act, a substitute for old section 12 had been provided, without saying in *lieu* thereof or any other express words of substitution; yet the substitution in that case would be just as complete by implication, as if declared in express terms. In such case it would hardly be contended that the distinct repealing section would be void, because the remote section or independent act actually providing a substitute was void. The rule and reasoning would be the same in each case.

If the Legislature had said "strike out section 12, and insert in lieu thereof as follows"—and then had not filled up the following or intended section, but had left it blank, it could hardly be said that it did not intend to strike out, when it had expressly said so, because it had provided nothing to take its place, the blank substitute being a nullity. Yet this is in effect the case before us, where an unconstitutional substitute is nothing, just as much as a blank substitute is nothing. We consider that the Legislature did intend to strike out, for it has said so expressly. True it has not provided a substitute; but that is an omission only as to the substitute, and does not affect the validity of the striking out.

But it is urged, that the Legislature intended to amend and make effective, the law for the assessment, collection and distribution of taxes on personal property, and not to annul such a law.

E. G. AND T. CO. vs. DONAHOE.                201

OPINION.

How shall we ascertain such intention? They have said, we do not want old section 12, because in express terms it is stricken out by them. They have also plainly said, we do want new section 12; which by necessary implication shows that they did not want old section 12. Yet we are asked to say by implication, that inasmuch as new section 12 is unconstitutional, that the Legislature intended in that event that old section 12 should remain.

Who can tell what action the Legislature would have taken in case new section 12 should prove to be unconstitutional? Does it appear that they contemplated any such contingency? If their intention had been as contended it would have been very easy for the Legislature to have expressed such intention in appropriate language.

To say that section 7 of the amending act, is *single*, and not *divisible;* that it shows the intention of the Legislature to be, that old section 12, should remain, in case new section 12 could not be substituted, begs the question. Said section 7, naturally divides itself into two distinct purposes of legislative action; the one is to repeal, and get rid of something that the legislature expressly said it did not want; namely, old section 12; the other, to adopt something that it did want; namely, new section 12. The one purpose, of all others appearing by the express terms of said section 7 is to get rid of old section 12; inasmuch as new section 12 embraces the radical difference between the old and the new acts, and shows that the Legislature for reasons, in its judgment deemed sufficient, as we must presume, did not intend in any event that old section 12 should stand. That was manifestly the change it had determined to make. It would seem paradoxical, therefore, for the Court to hold, that the legislative intent to get rid of that section is best interpreted by retaining it. For this would be the logical result of such a conclusion.

In view of the express repeal of old section 12, and the implied intention not to have it, by enacting new section 12, which in some of its provisions is radically different from the old section; would

it not be speculation pure and simple to say that the Legislature did intend to retain the old section if the new section should prove to be unconstitutional? Would not this be entering upon the realm of judicial legislation, and the substitution of the hypothesis of the Judiciary for the will of the Legislature; with nothing to guide us as to what the Legislature would actually have done in such a contingency?

It is somewhat remarkable that after the most diligent search, no case has been found in the books which directly supports such a proposition.

It is claimed further, however, that as the unconstitutional part of new section 12 relates only to taxation for municipal purposes that the statute is still effective, for State and county purposes, if the unconstitutional parts are capable of separation from the remainder of the act; that is, in the language of the defendant, if "That which is left is complete in itself, sensible and capable of being executed." Of course if this be so, the law, under well settled rules, would still be valid.

A careful examination of the statute shows that the provision for taxation for municipal purposes, relates not alone to the payment to the city of the money so received as and for its use, but necessarily enter into the assessment, levy and collection thereof as well; indeed it pervades every material feature of the act as essential parts of its structure as a method of raising revenue by taxation and is therefore incapable of separation; inasmuch as said section 12 as amended says, "That of the moneys which shall be *levied* and *collected* under the provisions of this act, in New Castle County, within the limits of the City of Wilmington two-fourths thereof shall be for the use of the mayor and council of Wilmington." The taint of unconstitutionality applies therefore to the levy and collection of the tax as well as to its distribution, and may not be separated from the residue without destroying the machinery for levying and collecting taxes for all purposes.

It may be said, moreover, that so much of new section 12

## E. G. AND T. CO. vs. DONAHOE. 203

CONCURRING OPINION.

being void, as relates to the distribution of the tax; the original statute as amended becomes inoperative, because the object for which the tax is levied is eliminated therefrom; thus leaving the statute without a purpose; practically a nullity.

Our conclusion is, that as section 12 of the original act, was repealed by section 7 of the amending act; that as so much of said new section 12 as relates to taxation for municipal purposes in the amending act is unconstitutional and void, because it is not covered by the title, and that as the unconstitutional part cannot be separated from the residue, without emasculating the statute, that therefore the act as amended is unconstitutional and void, and the plaintiff is entitled to recover.

Entertaining this view, it becomes unnecessary for us to consider the remaining questions, which were raised and argued with so much force and ability, viz. :

*First,* the unconstitutionality of the act because it is claimed to be in violation of section 1, Article 8 of the Constitution of 1897 providing for uniformity in taxation.

*Second,* the alleged illegality of the tax for 1898, because it was not assessed according to law, in that the taxable had no day in Court, no opportunity to review the assessment or to take an appeal.

It is ordered that the prothonotary certify this opinion to the Superior Court for New Castle County.

GRUBB, J. (concurring) :

I would say that while I concur generally in the conclusions reached by the majority of the Court, and also in the line of reasoning and in the language generally, nevertheless there is one consideration essential to the determination of this case which, for want of time properly to incorporate it in the opinion of the majority of the Court, I will now endeavor to present as explicitly and concisely as possible.

Whilst it is apparent from the act of 1898, that the Legislature intended that taxation upon investments should continue, yet it is equally apparent therefrom that the Legislature also unquestionably intended that it should not continue for the purposes as expressed in section 12 of the act of 1897. For the repealing clause of section 7 of the amending act expressly, and the substitutionary clause impliedly shows, beyond all doubt, that the total taxes to be be collected from investments should no longer be distributed exclusively for State and county purposes alone.

Therefore, although the Legislature intended to amend the act of 1897 and to continue taxation of investments, yet it clearly did not intend to amend it by continuing the distribution provisions of section 12 thereof, unaltered.

In view of the express declaration of said repealing clause, and of the necessary implication of the substitutionary clause of said section 7, it is reasonable to presume that, in the judgment of the Legislature of 1898, the distribution provisions of section 12 of the act of 1897, were unequal, unjust, or otherwise objectionable in their operation, and therefore should not longer continue in force. Accordingly they determined and provided, as the act of 1898 discloses, *first* for their repeal and discontinuance, and *second* for the continuance of taxation of investments for a radically different purpose.

Hence to contend that because they intended to amend the original act and continue the taxation of investments, but for a distinctly different purpose—as the said municipal purpose was— therefore the Legislature intended, in case such purpose failed, to continue the very provisions in question of section 12 of the original act, when by the provisions of section 7 of the amending act they both expressly and impliedly show, the contrary, is both an erroneous inference and an unwarranted assumption. From these actual circumstances it is manifestly more reasonable to presume that the Legislature of 1898 would have altered the title of their amending act so as to include taxation for municipal purposes,

# E. G. AND T. CO. vs. DONAHOE. 205

DISSENTING OPINION.

if they had foreseen that otherwise the said distribution clause would be unconstitutional and void.

In the absolute repeal clause of said section 7 of the act of 1898, the Legislature expressly repealed and actually annulled said provisions of section 12 of the original act. This part of the legislative purpose was unquestionably and unconditionally accomplished. The substitutionary clause providing for the intended remedy of the faults of the old section 12 failed, but by no intent or expectation of the Legislature. But because this one of their two purposes may have failed through the decision of this Court, that does not warrant us in holding that what the Legislature clearly intended should not continue, shall nevertheless be declared to continue. It is simply the failure of the Legislature to effect one, but not the other of their manifest purposes, in the opinion of the majority of this Court.

Whilst we have no evidence of what the Legislature would have done if it had known that its intended substitutionary clause was unconstitutional and void, yet we have the inherent testimony of the amending act itself that the said provisions of section 12 of the original act were, in the judgment of the Legislature, presumably, so unequal, unjust or otherwise objectionable that they intended and declared that they should be discontinued, and no longer be operative or in force.

Under these circumstances it is not within the proper sphere or duty of the Court, either to conjecture or declare that which is exclusively a matter of legislative power and discretion. Hence if the General Assembly, having, as we consider, intentionally, absolutely and unconditionally repealed section 12 of the act of 1897, have failed, for any reason, to enact a valid substitute therefor, the remedy must be sought in legislative, and not judicial action.

BOYCE, J. (dissenting):—I fully concur in the opinion just delivered, in so far as it holds, in effect, that the title of the act to amend *Chapter 381, Volume 20, Laws of Delaware*, entitled, "An Act to equalize taxation for State and County purposes," being

*Chapter 24, Volume 21 Laws of Delaware,* is not sufficiently com-prehensive, it being too restrictive, to embrace that part of section 7 of the said act which attempts to amend section 12 of the original act, by providing " that of the moneys which shall be levied and collected under the provisions of this act, within the limits of the City of Wilmington * * * * two-fourths thereof shall be for the use of ' The Mayor and Council of Wilmington,' " and that, there-fore, the attempted amendment is unconstitutional by reason of *Section 16 Article 2* of the *Constitution of 1897*, which provides that " no bill or joint resolution except bills appropriating money for public purposes shall embrace more than one subject, which shall be expressed in the title." But I have been compelled, with great reluctance, to differ with the opinion in maintaining that sec-tion 12 of the original act was expressly repealed by section 7 of the amendatory act; and that said original act is, by reason thereof, inoperative and void.

The general scope and purpose of the amended act as expressed in the title thereof was " to equalize taxation for State and County purposes," and to this end the Legislature passed the said original act. It is obvious that the purpose of the amendatory act was to amend the original act by adding thereto certain curative features, matters of detail largely, for the more efficient enforcement thereof as well as to attempt to provide for a somewhat different distribu-tion of the revenues to be derived from the taxes to be levied and collected under the said act within the limits of the City of Wil-mington as aforesaid. There is clearly and manifestly nothing in the language of the said amendatory act which in any way signifies an intent on the part of the Legislature to defeat the main purpose of the said original act either by direct or indirect means. But on the contrary the republished act as amended clearly and unmistak-ably evinces the legislative intent to continue the subject of taxation provided for under the said original act, and for the purposes therein mentioned, except so far as the attempted amendment pro-posed a different distribution of the taxes to be levied and collected

E. G. AND T. CO. vs. DONAHOE.    207

DISSENTING OPINION.

thereunder as aforesaid.    And if section 12 of the republished act, being the substitutionary words contained in section 7 of the amendatory act, be void (and the Court are unanimously of the opinion that the said attempted substitution is void), and if section 12 of the original act be repealed by virtue of said section 7, which I do not concede, then the obvious intent of the Legislature to continue the system of taxation provided for under the said original act is defeated; for the republished act as amended, in that event, becomes inoperative, because the object for which the tax is authorized is eliminated therefrom, leaving the said act without a purpose, and, therefore, rendering it a nullity.

Upon the question whether section 7 of the amendatory act repeals section 12 of the original act, the substitutionary portion of the former section being void, I cannot resist the conviction that the Legislature did not intend by attempting to amend the said original act to defeat the main purpose and design thereof, and thereby to annul the very act itself.    Nor do I think that said section 7, with the unconstitutional part thereof rejected, can, within the legislative intent to be gathered from the whole of said section, be given, under any well settled rule of construction, a separate and independent positive force and operation for the purpose of enacting what the Legislature, under every reasonable intendment, never meant or intended, viz., the annulment of the very statute which at most they only sought to amend.    And in the determination of this question the manifest intent on the part of the Legislature to continue the system of taxation established by the said original act has an important bearing upon the effect of the void portion of said section 7 on the remainder thereof.

It is an established rule, applicable alike to the whole or a part of a statute, though stronger in favor of the former than the latter, that all reasonable doubts and presumptions are to be solved in favor of the validity of a statute.    And while it is true that a portion of section 7 is unconstitutional, yet if there be a reasonable doubt about the remaining portion of said section being separable

from the unconstitutional portion thereof, within legislative intent, and effective for the purpose of an independent, absolute repeal of said section 12 of the original act, thereby rendering the latter act nugatory, then such doubt should be solved in favor of the latter act and the valid amendments thereto; and especially so if there be nothing in the language, scope and purpose of the said section 7 which in any manner reflects or signifies an intent or design on the part of the Legislature to abolish the said system of taxation, but rather to change or modify the mode of distribution of the taxes only.

In the case of *Wellington. et. al. petitioners, etc., 16 Pick.* (*Mass.*), *87*, Shaw, Chief Justice, said:—" When called upon to pronounce the invalidity of an act of the Legislature passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. And under this safe rule, I am unable to dispose of this question, having rejected part of said section 7 as unconstitutional, by giving to the remainder thereof a distinct, positive operation for the purpose of effecting the repeal of said section 12 and the consequent annulment of said original act; for I not only entertain a reasonable doubt that the Legislature ever intended such a consequence, upon it being determined that the main, I may say the sole, purpose of said section 7, cannot be carried into effect, the essential part thereof being void, but I am constrained to believe that every reasonable intendment is against such a construction. It seems to me very evident upon an inspection of said section that the invalid portion thereof formed an inducement or consideration for the enactment of the remainder thereof; and that the pronounced repeal clause therein was not in fact, a repeal at all as an independent act but merely an incidental provision within the scope and

purpose of said section to make room for the words of substitution intended to take the place of said section 12.

"It is no doubt true * * * that the same act of legislation may be unconstitutional in some of its provisions and yet constitutional in others * * *." But this must be taken with this limitation, that the parts, so held respectively constitutional and unconstitutional, must be wholly independent of each other. But if they are mutually connected with and dependent on each other as conditions, considerations, or compensations for each other as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them. ( *Warren and others vs. Mayor and Alderman of Charlestown, 2 Gray. (Mass.), 94*). If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained—*Cooley on Const. Lim. (6th. Ed.), 211*. In the application of this principle of construction, Judge Cooley, in a note on page 212 of the same treatise, says : " It must be obvious, in any case when part of an act is set aside as unconstitutional, that it is unsafe to indulge in the same extreme presumptions in support of the remainder that are allowable in support of a complete act when some cause of invalidity is suggested to the whole of it. In the latter case, we know the Legislature designed the whole act to have effect, and we should sustain it if possible ; in the former, we do not know that the Legislature would have been willing that a part of the act should be sustained if the remainder were held void, and there is generally a presumption more or less strong to the contrary. While, therefore, in the one case the act should be sustained unless the invalidity is clear, in the other the whole should fall unless it is manifest the portion not opposed to the Constitution can stand by itself, and that in the

legislative intent it was not to be controlled or modified in its construction and effect by the part which was void." And again, on page 220, he says: "Great caution is necessary in some cases, or the rule which was designed to ascertain and effectuate the legislative intent will be pressed to the extreme of giving effect to part of a statute exclusively when the legislative intent was that the part should not stand except as a component part of the whole."

Looking at section 7 in its entirety and at the legal import and evident legislative intent of the words employed therein, I cannot see that it was the manifest intent of the Legislature to strike out said section 12 except for the purpose of the intended substitution and it does seem to me that the legislative intent in the use of the words, "Amend the said chapter by striking out all of section 12 thereof, and inserting in lieu thereof the following" was to be controlled in its construction and effect by that part of said section, the substitutionary part, which we all agree is void. The insuperable difficulty which I find in the application of the well settled principle of construction with reference to statutes which are unconstitutional in part, to effect the repeal of said section 12, is, that by rejecting the unconstitutional portion of said section 7 and then maintaining that the remainder of the said last mentioned section is valid and repeals said section 12, the said section 7 is made to enact what the Legislature never intended. Such a construction confers upon the first part of said section 7 a positive operation as a distinct and separate act, beyond any legislative intent to be gathered from the language and purpose of the whole of said section, which was both to strike out and to substitute said section 12; and beyond what I am able to see and to know the Legislature would have enacted in view of the invalidity of that portion of said section 7 which is unconstitutional. And to give to the remainder of said section the positive operation necessary to effectuate the repeal of said section 12, in view of the closely connected relation and evident single purpose of the parts of said section, it should be clearly manifest from the words employed there-

in that it was the intent of the Legislature to repeal said section 12 and thereby to annul the original act, irrespective of the substitution intended to be effected by the unconstitutional portion of said section 7.    And unless such an intent is manifest the remainder of said section 7, after rejecting the unconstitutional part, should not stand for the purpose of the repeal of said section 12 alone.    It seems to me that the clear, evident intent of the Legislature in passing said section 7, was that it should operate as a whole, and for the sole purpose of substituting said section 12 as therein plainly expressed, by striking out the last mentioned section and inserting in lieu thereof that provision in said section 7 which we hold to be void.    And the latter section, failing in its purpose of substitution, it is impotent for the purpose of striking out said section 12 as a distinct, independent act.    And it seems to me that every reasonable intendment is in favor of this construction ; for while it is true that the Legislature clearly intended to strike out said section 12 in order to provide for a new and different distribution of the taxes required to be levied and collected under the original act and the amendments thereto, than that provided under the said original act, yet it is equally true that they intended to continue the system of taxation originally established; and certainly it is most clear that they did not intend to abolish it altogether

But it has been said in effect by maintaining that the whole of said section 7 is void because of the unconstitutional portion thereof and that by reason thereof said section 12 remains unimpaired, the Legislature is made to enact what they did not intend to do ; for it is urged that the Legislature manifestly intended to change the provision in said section 12 in relation to the distribution of the said taxes as provided under the orginal act.    This objection does not meet the question now before us, for the Legislature has failed in doing what they intended to do by said section 7.    And besides the same objection may be urged against the claim that said section 12 is stricken out and repealed by virtue of said section 7, notwith-

standing the void portion of the latter section, for such a repeal as
a distinct and separate act, without substituting the words attempted
to be substituted therefor renders the whole act as republished
nugatory; and clearly there is nothing in section 7 which discloses
any such legislative intent. And it may be said that the failure of
the legislative intent to change the mode of distribution of the
taxes for another by the act of substitution does not create the
intent to nullify the original act. If the latter is effected it must
appear that the Legislature intended it quite as clearly as that they
intended to change only the method of distribution under said sec-
tion 12. The language of said section 7 clearly and explicitly
shows that the Legislature intended both to strike out said section
12 and to substitute another provision therefor. And since, there-
fore, a part of said section is void, contrary to the legislative expec-
tation, we must look beyond the intent of the Legislature to be
gathered from the language of said section 7, to the *consequences* of
their failure to enact what they intended.

It is the effect of their failure to enact in a constitutional
manner what they intended with which we have to deal, and in
this connection to consider the relation which the void portion o
said section 7 bears towards the remainder thereof, and to ascertain
whether or not the two parts of said section are interwoven and
bound together *in one purpose and inseparable.* It is a well settled
rule of construction that the customary repealing clause has no
effect and repeals nothing if the statute to which it is annexed is
invalid, because there is nothing inconsistent or in conflict with it.
The intent of the Legislature to change the existing law in such a
case is as manifest and certain as it is in this; but that intent,
whatever it may be, and however plainly expressed, fails, if the
act, intended to become a law, is void, and there as here follows
the effect of such failure upon the existing law which it was plainly
intended to change, but to change, or modify, only as by the pro-
posed new act, and not to abrogate. And it seems to me, viewing
this case as I do, that the principle underlying this rule of con-

struction is applicable to this case; for, as I view it, the sole purpose of said section 7 was to substitute another provision for said section 12, upon the same subject matter, and the attempted amendment failing in that purpose, for the reason stated, it is a nullity, without any effect, leaving section 12, as a consequence, and not that it was the legislative intent, the same as if no attempt had been made to substitute another provision for it. It is true that the rule to which I have just referred is in relation to the effect of a repealing clause, the body of the act to. which it is attached being void. But the principle of construction is the same if it be a void amendment, for, in the latter case, the act attempted to be amended is not, in fact, amended; and, therefore, it remains unchanged. So in this case if the whole of section 7 be void, and I hold it is because its object is not divisible into two independent parts, it matters not what the Legislature intended thereby, section 12 is not affected. Therefore, as I have said, it is a question so far as section 7 is concerned whether, within the legislative intent, the whole of said section must stand or fall together. And I hold that because it is void in part, it is void altogether for the reason that it is inseparable within the legislative purpose and design thereof.

And in addition to what I have already said, I may add that it seems to me that the reasoning in the case of *State ex. rel. Law vs. Blend, 121 Ind. 514,* is sound, convincing and applicable to this case. The facts were these: An act of the Legislature was passed on the fifth day of March, 1883, creating a board of metropolitan police in all cities in the State of Indiana, having a population of 29,000, or more, inhabitants, to be appointed by certain officers designated in the act. By a subsequent act, passed on the seventh day of March, 1889, the Legislature attempted to abolish the said board of police, and to create another and a fire department, to be elected and appointed differently than was provided under the first act. The latter act provided that all laws and parts of laws coming in conflict with it, *and especially the act providing for a metropolitan police in cities of 29,000 inhabitants are by this*

*act repealed.* (Note especially the words in italics, showing an express attempt as well as intent on the part of the Legislature to repeal the first act.) The body of the last act was held to be in conflict with the Constitution and therefor void. And notwithstanding this, it was contended on the one hand that the repealing clause was valid and that the first act was repealed; on the other, it was urged that the act itself being void, the repealing clause attached thereto fell also, and that as a consequence the first act still remained in full force. The Court in part said: "Where it is not clear that the Legislature by a repealing clause attached to an unconstitutional act, intended to repeal the former statute upon the same subject, except upon the supposition that the new act would take the place of the former one, the repealing clause falls with the act to which it is attached." * * * "It is contended, however, that it is manifest from the language used that the Legislature intended to repeal the act of 1883 in any event." And the same position is maintained here with reference to the alleged valid portion of said section 7. "But," continued the Court, "we are unable to agree with counsel in this construction. We must accord to the Legislature the belief that the act of 1889 was constitutional, and the intention that the provisions of that act would take the place of the act of 1883." This was a most reasonable and natural conclusion. And it may well be assumed in this case that the Legislature believed that the substitutionary words of section 7 were constitutional and that they would take the place of section 12. The only safe rule of construction is to expound the intention of the Legislature by what they did, regarding, as they must have done, the whole of said section 7 as valid.

In another case, *Judson vs. City of Bessemer, 87 Alabama, 240,* the question was as to the effect of a void amendatory act upon the original act. The attempted amendment was as follows: "That section 38 of the charter of the City of Bessemer, Alabama, be, and the same is hereby amended by striking out the word 'fifty' in the fifth line of said section, and inserting the word 'thirty' in lieu

E. G. AND T. CO. vs. DONAHOE. 215

DISSENTING OPINION.

thereof." The amendment was declared to be unconstitutional because the amended section had not been re-enacted and published at length, as required by the Constitution, and the original section 38 was held to be unimpaired. In both of these cases there was an express repeal within the legislative intent such as is claimed for a portion of said section 7 in this case. The attempt to repeal the act of 1883, in the Indiana case, and to strike out "fifty" and to substitute, "thirty," in lieu thereof in said section 38, in the Alabama case, was as plainly and unmistakably exerted by the respective legislatures, and with as clear an intent to modify the former statute as was the attempt and intent to strike out and to substitute said section 12 in this case. What the legislatures intended was plainly and explicitly set forth in the language employed in each of those cases as it is in this. The attempted express repeal of the said act of 1883, in the first case, failed to operate because the act to which the repealing clause was attached was in conflict with the Constitution. And the express attempt to strike out "fifty" and to substitute "thirty" in lieu thereof, in the Alabama case, failed, because the amendment had not been re-enacted and published at length. But the manifest intent of the respective legislatures was not absent in either of these cases; yet its presence did not control the question of the effect of the void repeal, in the one case, and the void amendment, in the other, upon the statutes intended to be affected thereby respectively. In determining this last question, the legislative intent as disclosed by each of the said void enactments did not control the courts in the construction and effect of such amendments upon the original statutes. And it should not in this case. The consideration of the question before us now that part of said section 7 is void, necessarily involves something more than the legislative intent to change the mode of the distribution of the revenues to be derived from the taxes to be levied and collected under the original act. The intent to modify the latter act has failed, and we must inquire as to the effect of the failure, and of the object of said section 7 and of the

relation between the void portion and the remainder thereof. Did
the void portion of said section 7 influence or induce the Legisla-
ture to pass the remaining part thereof? Were not the words of
the repeal clause a mere means or incident to effect the proposed
substitution? Are not the two parts of said section into which it
has been divided for the purposes of this case so mutually connected
with and dependent upon each other as conditions, considerations,
or compensations for each other, as to warrant a belief that the
Legislature intended them as a whole? These questions must be
answered in the negative in order to warrant the repeal of said sec-
tion 12. This I am unable to do, because in severing the uncon-
stitutional portion of said last section from the remainder thereof, I
must, in order to accomplish the repeal of said section 12, as a
separate and independent act, enlarge the scope of the remainder of
said section 7 beyond any apparent legislative intent to be gathered
from said section; for such a construction nullifies the original act,
and the valid amendments thereto altogether, and there is manifestly
an absence of legislative intent to be found therein for any such
purpose. . I am unable to see and to declare, as I must do to justify
the repeal of said section 12, that the intention of the Legislature
was that the part of said section 7, pronounced valid should be
enforced though the other part thereof be void.

*Poindexter vs. Greenhow, 114 U. S., 270, 304.*

I hold that said section 7 is single in its purpose of substitution
only, and that it is not separable into two or more parts, each per-
taining to separate and distinct objects, independent of each other,
and that, therefore, it can only be considered as an inseparable
whole. The said section in its scope and purpose signifies no more
than if the Legislature had sought to amend said section 12 in this
form: "Be it enacted, that said chapter be and the same is hereby
amended by substituting for section 12 thereof the following:"—
and then had added the said substitutionary words which are con-
tained in said section 7. Substitution alone is the extent of the
meaning and purpose of said section 7 within the legislative intent

to be gathered therefrom. And the attempted substitution being unconstitutional the whole of said section is a nullity; and, as such it does not affect the section intended to be substituted. Section 12 is, therefore, not repealed, but it remains unimpaired.

*Lastly :* The question before us is not one of *casus omissus*— what the Legislature attempted to do, they expressed in clear and explicit language, and there was nothing omitted by inadvertence or accident, such as falls within the meaning of the maxim. Nor do I conceive it to be the case of an " express repeal" as a separate and independent act for the reasons already stated. And it is very evident that it is not the case of amending a statute by a simple repeal of some provision thereof. But it is simply what said section 7 manifestly shows it to be, a case of an attempt to amend a section of an act by substituting another provision in lieu thereof. And the attempted substitution failing, the attempted amendment, in toto, likewise fails for the reason already assigned. I have not deemed it necessary to pass upon the other objections, presented at the argument, against the validity of the original act and the amendments thereto, the opinion of the majority of the Court having disposed of the case before us upon the two questions fully set forth in the opinions now delivered.